Filed 8/11/21  P. v. Marsh CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059355 |
| v. | (Super. Ct. No. 93WF1745) |
| MARCUS EDWARD MARSH, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Michael A. Leversen, Judge.  Reversed and remanded with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Meredith S. White and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

In 1994, Marcus Edward Marsh was convicted, along with a codefendant, of two counts of first degree murder. According to this court's unpublished opinion affirming the convictions on appeal, the murders took place during the burglary and robbery of a home believed to contain drugs and cash. The amended information filed against Marsh and his codefendant drew no distinction between their individual levels of culpability, alleging that each had committed two counts of first degree murder and describing both as a principal who was "vicariously armed with a firearm, and knew that another principal was personally armed" during the commission of the murders. At trial, the prosecutor made no attempt to establish who was the actual killer.

Marsh filed a petition pursuant to Penal Code section 1170.95,[1] seeking to have his first degree murder convictions vacated and to be resentenced. The trial court denied the petition without an evidentiary hearing after concluding the jury in Marsh's trial had necessarily found he was either the actual killer of the two victims or had been a major participant in the robbery/burglary who acted with reckless indifference to human life. The court reasoned that because that latter finding matched language in the current statute defining first degree murder, it established as a matter of law that Marsh would also have been convicted of murder under current law—and thus that he was not entitled to resentencing under section 1170.95.

Marsh argues the trial court erred because the requirements for finding that an aider and abettor was a "major participant" in the underlying felony and had "acted with reckless indifference to human life" were clarified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*), and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), both of which were decided in the period between Marsh's 1994 trial and the enactment of the current statute defining first degree murder. Because the Supreme Court effectively redefined the relevant standards in *Banks* and *Clark*, Marsh contends the findings made

---

[1] All further statutory references are to the Penal Code.

against him in 1994 do not satisfy the identically worded standards in the current murder statute.

The Attorney General acknowledges the Supreme Court's clarification of those standards might provide a basis for challenging such findings made in earlier cases; nonetheless he contends defendants such as Marsh cannot raise the issue in the context of a section 1170.95 proceeding, and are instead required to successfully challenge the findings in a habeas corpus proceeding before they can show an entitlement to resentencing under section 1170.95.

We reject the Attorney General's position. Section 1170.95 provides a remedy for defendants who were convicted of murder under theories that have since been disapproved under California law. Under the terms of that remedy, if the defendant can make a prima facie showing, based on the record of conviction, that there is a legitimate dispute about whether he would have been convicted of murder under current law, he is entitled to an evidentiary hearing at which the prosecutor has the burden of proof. The fact the defendant might also have the right to file a petition for habeas corpus does not nullify the statutory remedy.

When we apply the statutory remedy to this case, we conclude the trial court erred by denying Marsh's petition before conducting an evidentiary hearing. Although Marsh's jury was instructed it had to make a finding expressed in the same words used in the current statutory definition of first degree murder, the jury was also instructed the standard meant something different than what current law requires. The record of conviction provides little basis to evaluate Marsh's individual culpability as required under *Banks*. Based on the record before us, it is impossible for us to conclude Marsh would have been convicted of first degree murder under current law. Consequently, the trial court erred by concluding, as a matter of law, that Marsh was not entitled to resentencing relief.

3

The order dismissing the petition is reversed and the case is remanded to the trial court with directions to issue an order to show cause and to conduct a hearing as required by the statutes to determine whether to vacate Marsh's murder conviction, recall his sentence and resentence him.

## FACTS

Marsh and his codefendant, Ralph Dennis were both convicted of two counts of murder that occurred during a burglary/robbery of a drug dealer. This court's unpublished opinion on direct appeal from the judgment describes the circumstances of the murders: "Sherryl Madison rented a townhome along with Walid Mallalah. The two frequently smoked marijuana together. Madison also knew Dennis and he stayed at the townhome from mid-October to mid-November 1992. In early November, Madison heard Mallalah and Dennis discuss robbing a drug dealer who kept large amounts of both money and marijuana in his home, and also had a gun collection. On the morning of November 17, Mallalah borrowed Madison's car taking Dennis with him. Later, Mallalah telephoned Madison and asked if anyone had called for him or Dennis. She replied no, and Mallalah said he had paged someone to call him at the townhome. A few minutes later a man called and Madison directed him to Mallalah's location.

"Sometime after 7:30 a.m., [the victims] were shot to death in [the] home. A safe was open and several guns were lying on the ground. Among the missing property items were a .357 magnum handgun and a Spectre semiautomatic pistol.

"When Mallalah returned home, he was upset and perspiring. Madison asked what happened and he replied, 'Don't ask.' A short time later, Madison saw Mallalah, Dennis and Marsh in the townhome's garage along with bags of marijuana and guns. A late model white Pontiac was also parked in the garage. Each defendant had a hard look on his face and appeared pumped up. When Madison asked what happened, Dennis told her they had gone to [the victims'] house and, while Mallalah remained

4

outside as a lookout, he and Marsh kicked in the front door, ordered [one victim] to open the safe and then killed both him and [the other victim.[2]] Marsh complained Mallalah should not share in the division of the loot because his diagram of [the home] was inaccurate. Mallalah argued that, but for him, they would not have known about the house. Dennis resolved the dispute by saying Mallalah would receive his share. [¶]

"The police found a notepad containing Marsh's name and the telephone number for his pager among Dennis' personal effects. Telephone records showed three calls from the townhome to Marsh's pager the day before the murders and a fourth call at 7:26 a.m. the next day. When contacted by the police Marsh initially denied knowing Dennis, receiving a page from him or speaking to him by phone, but said his nickname, 'Wise,' sounded familiar. Later, he admitted speaking with Dennis after being paged, claiming it concerned meeting with some women. Marsh also gave inconsistent statements concerning the last time he spoke to Dennis. The police discovered one Lawrence Perkins rented a white Pontiac Grand Prix on November 16, listing Marsh as a second driver. In January 1993, Mallalah returned to his native country of Kuwait." (*People v. Marsh* (Sept. 30, 1996 G017229 [nonpub. opn.] (*Marsh I*), pp. 2-3.)[3]

The amended information alleged crimes against Marsh and Dennis only, as Mallalah remained outside of the court's jurisdiction. The amended information alleged that both Marsh and Dennis were guilty of murder in the killing of Robert Kecker (count 1) and Karen Stevens (count 2.) It further alleged that each defendant was vicariously armed in the commission of the murders and knew that another principal was

---

[2] Contrary to what is stated in the appellate opinion, Marsh contends he was merely the "last minute getaway driver," and that it was Mallalah, rather than he, who went into the home with Dennis. Marsh also suggests that the witness who testified at trial did not state Dennis had identified Marsh specifically as the person who accompanied him inside. No evidence is cited in support of those claims.

[3] Both Marsh and the Attorney General rely on the appellate opinion's statement of facts to establish the circumstances of the murders.

armed. As special circumstances, the amended information alleged that both defendants committed the two murders charged in this case, within the meaning of section 190.2, subdivision (a)(3), and that the murders of both Kecker and Stevens were committed by the defendants while they were engaged in the crimes of robbery and burglary in the first or second degree.

At trial, the prosecutor made no effort to prove that either defendant was the actual killer (*Marsh I*, at p. 10). The jury was not asked to make any findings concerning their relative culpability. The jury was instructed that it could only find the alleged robbery/burglary special circumstance true as to either defendant if the jurors were satisfied beyond a reasonable doubt that the defendant had, "with reckless indifference to human life and as a major participant," aided, abetted, counseled, commanded, induced solicited, requested or assisted in the commission of the crime of robbery or burglary. The jury thereafter found that special circumstance to be true as to both defendants.

On appeal, this court concluded the evidence was sufficient to support the theory that "both defendants were major participants in the crimes and aided and abetted them with reckless indifference to human life." (*Marsh I*, at p. 10.) Our opinion made no attempt to identify the actual role played by either defendant: "The record supports the felony-murder special circumstance findings. Defendants kicked in the residence's front door. The evidence suggests defendants found their victims in bed and physically assaulted them. Blood was found in the victims' bedroom and the mattress and bedcovers were askew. Klecker suffered a lacerated scalp consistent with having been struck with a blunt instrument. The manner of killing also supports the findings. Stevens had been shot in the back of the head. The police found a pillow on top of Klecker's body with holes in it, sooting around the edges and burnt material on the inside. The bullets were found underneath the carpet and had caused indentations in the concrete floor. This evidence indicates defendants killed their victims execution-style, shooting

6

them as they lay on the ground with the pillow muffling the gunshots. Defendants' attack on the sufficiency of the evidence is without merit." (*Marsh I*, at p. 11)

On January 14, 2019, Marsh filed his petition for resentencing. In his petition, signed under penalty of perjury, Marsh asserts that he was convicted of murder pursuant to the felony murder rule or the natural and probable consequences doctrine, and that due to changes made to sections 188 and 189 in 2019, he could not now be convicted. He also asserted he was not the actual killer and he denied he was a major participant in the underlying felony who acted with reckless indifference to human life during the course of the felony.

In response to the petition, as required by the statute, the trial court appointed counsel to represent Marsh and requested briefing from both sides. In its opposition, the prosecution argued that the record of conviction demonstrated Marsh was a major participant in the burglary/robbery who had acted with reckless indifference to human life, and thus that he would still have been convicted of first degree murder under current law and was therefore ineligible for resentencing relief.

In a supplemental brief, the prosecutor specifically relied on the jury instructions given in connection with the special circumstance allegations, arguing that the jury's true finding on the special circumstance allegation that the murder was committed during a robbery or burglary necessarily reflected its implied determination that Marsh had been a major participant in those crimes who had acted with reckless indifference to human life. The prosecutor's position was that the jury's implied finding satisfied the current statutory standard for first degree murder, and thus demonstrated as a matter of law that Marsh would have been convicted under current law.

The trial court accepted the prosecutor's argument and concluded the jury's implied finding was binding on Marsh for purposes of his resentencing petition. The court explained that the recent cases of *People v. Gomez* (2020) 52 Cal.App.5th 1, 14-17, review granted (*Gomez*), and *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142,

7

review granted (*Galvan*), established that a jury finding could not be attacked in a section 1170.95 proceeding, and concluded it was bound by those decisions. Additionally, the court explained that the facts of the case (which, as recited by the court, mirrored the facts stated in the appellate opinion), were sufficient to demonstrate Marsh could not make a prima facie showing he was entitled to resentencing. The court consequently denied the petition without issuing an order to show cause or holding an evidentiary hearing.

## DISCUSSION

1. *Resentencing Law*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Sen. Bill 1437), amended the felony murder rule and eliminated the natural and probable consequences doctrine as a means of proving murder. Sen. Bill 1437 was enacted "to ensure that murder liability is not imposed on a person is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to his life." (Stats., 2018, ch. 1015, § 1, subd. (f).) Section 189, as amended, now provides that in cases where a death occurs during the perpetration or attempted perpetration of a felony listed in section 189, subdivision (a), the defendant is liable for murder only if the person was the actual killer, the person acted with intent to kill in aiding, assisting or soliciting the killer, or if the person "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Sen. Bill 1437 also provides a remedy for persons previously convicted of felony murder or murder under a natural and probable consequences theory. Section 1170.95 permits an individual to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Sen. Bill 1437's changes to the definition of the crime.

8

Section 1170.95 provides a petition for relief must include: "(A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a). [¶] (B) The superior court case number and year of the petitioner's conviction. [¶] (C) Whether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1).)

In cases where the petition contains all required information, section 1170.95, subdivision (c), prescribes a two-step process for the court to determine if an order to show cause should issue: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If  he petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . .  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

A prima facie showing of entitlement to relief is established if the petitioner demonstrates there is sufficient evidence, which if believed, would demonstrate he is entitled to be resentenced.  (*People v. Drayton* (2020) 47 Cal.App.5th 965, 977 (*Drayton*).)   In assessing the issue, the trial court looks at "documents in the court file or otherwise part of the record of conviction that are readily ascertainable [including] the complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment."  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, review granted Mar. 28, 2020, S260493.)  The court may also consider the appellate court's opinion on review as part of the record of conviction.  (*People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137, review granted Mar. 18, 2020, S260598.)

However, "the trial court should not weigh evidence or make credibility determinations."  (*Drayton, supra*, 47 Cal.App.5th at p. 968.)  Instead, "the trial court should accept the assertions in the petition as true unless facts in the record conclusively

refute them as a matter of law" (*Ibid; People v. Duchine* (2021) 60 Cal.App.5th 798, 811-815 (*Duchine*).)

"If, accepting the petitioner's asserted facts as true, he or she meets the requirements for relief listed in section 1170.95, subdivision (a), then the trial court must issue an order to show cause." (*Drayton, supra*, 47 Cal.App.5th at p. 968.) "In assessing the petitioner's prima facie showing, the trial court should not weigh evidence or make credibility determinations." (*Ibid.*)

If an order to show cause issues, the court must hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) If the prosecutor does not stipulate to vacating the conviction and resentencing the petitioner (§ 1170.95, subd. (d)(2)), the prosecution has the opportunity to present new and additional evidence at the hearing to demonstrate the petitioner is not entitled to resentencing. (§ 1170.95, subd. (d)(3).) The petitioner also has the opportunity to present new or additional evidence in support of the resentencing request. (*Ibid*.) It is during that phase that the court may weigh the evidence in reaching a decision. (*Duchine, supra,* 60 Cal.App.5th at pp. 811-815.)

2.    *Banks and Clark*

Marsh argues the 1994 jury's implied determinations that he was a major participant in the underlying robbery/burglary and that he acted with reckless indifference is not sufficient to establish that he would have been convicted of first degree murder under current law because *Banks* and *Clark* effectively altered the meaning of those standards. On this record, we agree.

*Banks* established an analytical framework for determining who qualifies as a "major participant" in an underlying felony for purposes of establishing the felony-murder special circumstance that renders a defendant eligible for the death penalty, while

10

*Clark* focused on what it means to act with "reckless indifference to human life" in connection with the same issue.[4]

In *Banks*, the Supreme Court emphasized the need to focus on a defendant's "individual culpability" to determine whether he or she was a major participant who could be found eligible for the death penalty as an aider and abetter. (*Banks, supra*, 61 Cal.4th at p. 801; see *Enmund v. Florida* (1982) 458 U.S. 782, 798 ["The focus must be on *his* culpability, not on that of those who committed the robbery and shot the victims"].) As the court explained: "A sentencing body must examine the defendant's *personal* role in the crimes leading to the victim's death and weigh the defendant's individual responsibility for the loss of life, not just his or her vicarious responsibility for the underlying crime." (*Banks, supra,* at p. 801.)

*Banks* also stated that in order to qualify as a major participant, "a defendant's personal involvement must be substantial, greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*Banks, supra*, 61 Cal.4th at p. 802.) In evaluating that issue, the court considers a variety of issues: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? . . . Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?" (*Banks*, at p. 803, fn. omitted.)

In *Clark*, the Court explained that reckless indifference means something more than an awareness that a risk of death is foreseeable in any violent felony. (*Clark, supra*, 63 Cal.4th at p. 617-618.) Even "the fact a participant [or planner of] an armed robbery could *anticipate* lethal force might be used" is not sufficient to establish reckless

---

[4]     For statutory reasons, the same analysis applies "'to *all* allegations of a felony-murder special circumstance, regardless of whether the People seek and exact the death penalty or a sentence of life without parole.'" (*Banks, supra*, 61 Cal.4th at p. 804.)

11

indifference to human life. (*Banks, supra,* 61 Cal.4th at p 808 (italics added); see *Clark,* at p. 623.) "The mere fact of a defendant's awareness that a gun will be used in the felony is not sufficient to establish reckless indifference to human life." (*Id.* at p. 618.) Reckless indifference "encompasses *a willingness to kill* (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Id.* at p. 617, italics added.)

Reckless indifference has both a subjective and an objective element. (*Clark, supra*, 63 Cal.4th at p. 617.) Subjectively, "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed," and he or she must consciously disregard "the significant risk of death his or her actions create." (*Banks, supra*, 61 Cal.4th at p. 801; see *Clark*, at p. 617.) And objectively, "'[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'" (*Clark*, at p. 617.)

As the Supreme Court recently explained in applying *Clark*, "[w]e analyze the totality of the circumstances to determine whether [an individual defendant] acted with reckless indifference to human life. Relevant factors include: Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony? [Citation.] "'[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient.""" (*In re Scoggins* (2020) 9 Cal.5th 667, 677 (*Scoggins*).)

12

*Banks* and *Clark* clarified the standards to such a degree that courts have treated the clarification as effectively a change in the law which justifies allowing previously convicted defendants another opportunity to challenge findings made against them. (*Galvan, supra*, 52 Cal.App.5th at 1141 [the two cases "clarified the requirements for the felony-murder special circumstance so significantly that courts have allowed defendants to challenge the validity of pre-*Banks* and *Clark* special circumstances findings via habeas corpus, making an exception to the rule that ordinarily bars a defendant from challenging the sufficiency of the evidence in a habeas petition"]; see also, *Scoggins, supra*, 9 Cal.5th at p. 673-674 [Supreme Court allows a defendant whose conviction pre-dated *Banks* and *Clark* to seek habeas corpus relief, despite the fact his challenge to the reckless indifference finding had already been raised and rejected on direct appeal].)

Some courts have held that the availability of habeas corpus relief in these circumstances obligates defendants to first pursue that remedy before attempting to raise the same point in the context of a section 1170.95 petition. (See, e.g., *Gomez, supra*, 52 Cal.App.5th 1; *Galvan, supra*, 52 Cal.App.5th 1134*; People v. Murillo* (2020) 54 Cal.App.5th 160, 168-169, review granted Nov. 18, 2020, S264978; *People v. Allison* (2020) 55 Cal.App.5th 449, 456-457). The Attorney General argues these cases are correctly decided, and Marsh is therefore precluded from challenging the sufficiency of the implied findings in this proceeding. We disagree.

In *Galvan*, the court reasoned that the existence of a habeas corpus remedy after *Banks* and *Clark* rendered it "unnecessary" for a defendant to petition for relief on the same basis under section 1170.95; moreover, the court reasoned it would be unfair to allow the issue to be raised in a section 1170.95 petition because the statutory standard for relief is more favorable to petitioners than is the standard of review on direct appeal; thus it would give petitioners an "enormous advantage" over other similarly situated

13

defendants based solely on based on their date of conviction. (*Galvan, supra*, 52 Cal.App.5th at pp. 1142-1143.)

But section 1170.95 provides a resentencing remedy to all defendants who meet its criteria; its availability is not conditioned on establishing that other remedies are unavailable. Courts cannot add such a condition out of concern the statutory remedy is too generous in comparison to a potential alternative. And defendants convicted after *Banks* and *Clark* are not "similarly situated" to those convicted before, for purposes of this issue. Defendants convicted after *Banks* and *Clark* had the benefit of the stricter *Banks/Clark* standards at their trials. Marsh did not.

*Gomez*, *supra*, 52 Cal.App.5th 1, is no more persuasive. In that case, the court again focused on the more favorable standard of review available to a petitioner under section 1170.95, concluding it was unfair to the prosecutor because "[t]he People should not be required to prove beyond a reasonable doubt, a second time, that Gomez satisfied those requirements for the special circumstance findings." (*Id*. at p. 17.) But that is a concern we must leave to the Legislature. Section 1170.95 dictates that defendants whose murder convictions were based on vicarious theories that have now been disapproved *should* have their convictions vacated, and should be resentenced, if the prosecutor did not prove at trial, and cannot prove now, that the defendant would still be culpable for murder under current law. If there is uncertainty about the defendant's culpability for murder under current law, the legislature placed the burden on the prosecutor to prove it.

Allowing a defendant to seek relief based on *Banks* and *Clark* in a section 1170.95 proceeding will not mean that every pre-*Banks* and *Clark* defendant who was found to be a major participant in the underlying felony who may have acted with reckless indifference to human life will be entitled to relief. In many cases, the trial record will provide sufficient detail about the petitioner's individual role in the crimes to

14

allow a speedy determination that a true special circumstances finding was returned in accordance with the standards of *Banks* and *Clark*.

So it was in *People v. Douglas* (2020) 56 Cal.App.5th 1, 3-4 (*Douglas*). There the court recited in some detail the circumstances of the defendant's involvement in the felony, including that he planned the armed robbery of a video store, supplied the loaded gun to his cohort, was in charge while the crime was carried out, and that after the clerk was shot, he not only lingered to empty the till, but also "emptied [the clerk's] pockets while [he] lay on the ground with blood pooling around his head." Two days later, he and the shooter committed another armed robbery. (*Ibid.*) Given those facts, the court concluded that "[u]nder *Banks*, *Clark*, and *Scoggins*, Douglas's culpability disqualifies him from resentencing." (*Id.* at p. 11.)

In this case, the record of conviction provides no such clarity. It reflects that while the jury instruction relied upon by the prosecutor required the jury to make a finding that Marsh was a major participant in the robbery/burglary who acted with reckless disregard for human life, the instruction offered the jury no guidance about what level of involvement would distinguish major participation from minor. And while the instruction did offer a definition of reckless indifference, that definition did not match the requirements of *Clark*. It stated only that "[a] defendant acts with reckless indifference to human life when such defendant, knew or was aware that [his] acts involved an extreme likelihood that such acts could result in the death of an innocent human being." The instruction given at trial did not advise the jury that the standard implied a "willingness to kill;" nor did it explain the factors to be considered in deciding whether the defendant's own conduct, his own understanding of the circumstances, and his own mental state, met the reckless indifference standard. Consequently, the jury instruction did not establish that the jury's finding satisfied the standards created by *Banks* or *Clark*.

The record provides little basis to assess the extent of Marsh's individual participation in the crimes. The appellate opinion, which seems to have been relied on by

15

the trial court in its ruling, says nothing about what Marsh knew of the plan, and little about what Marsh personally did. It does not reflect that he was involved in the planning, that he obtained or supplied the gun, or that he knew the gun used was loaded. It does suggest he was involved in the rental of the white Pontiac, which was seen by Madison at her townhome after the murders occurred, but it does not actually establish the Pontiac was used during the crime. Otherwise, the opinion says Marsh went into the house with Dennis, while Mallalah waited outside.

The record reflects that, as between the Marsh and Dennis, *they* kicked down the door and ordered Klecker to open the safe. Klecker and Stevens were then killed. Exactly who did what is not revealed. As we observed at the outset, at trial the prosecutor failed to prove the identity of the actual killer. If we assume (as we must because the issue was never resolved) that Marsh was not the actual shooter, we have no evidence of what he did once the burglary/robbery was underway.

And therein lies the problem. As *Banks* makes clear, it is Marsh's individual culpability—rather than the blend of his culpability with that of Dennis—which must be assessed in deciding whether he was a major participant in the felony and acted with reckless disregard for human life. The record of conviction before us provides an insufficient factual basis to make that assessment. It is not enough to prove two perpetrators broke into a home, and by the time they came back out, two other people had been murdered. As the Supreme Court observed in a slightly different context in *People v. Woodell* (1998) 17 Cal.4th 448, the probative value of an appellate opinion is case specific, and "[i]t is certainly correct that an appellate opinion might not supply all the answers." (*Id*. at p. 457.)

Because the record of conviction—including the appellate opinion describing the circumstances of the crime—is insufficient to establish as a matter of law that Marsh qualified as a major participant in the robbery/burglary, who acted with

16

reckless disregard for human life, we conclude the trial court erred in denying the petition without issuing an order to show cause and conducting a hearing on the issue.

## DISPOSITION

The postjudgment order is reversed.  The case is remanded to the trial court with directions to issue an order to show cause and to hold a hearing to determine whether to vacate Marsh's murder conviction, recall his sentence and resentence him.


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

17